UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF DWAYNE ZACHARY, LINDA LAMPKIN; DWAYNELA' Ta'SHAY ZACHARY THOMAS; AUGUSTINE ZACHARY; SHAMIKA THOMAS; AILEEN ELDORA ZACHARY; DWAYNE ZACHARY; LARRY MARTWAINE ZACHARY; JOSHUA CLERANCE ZACHARY<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SACRAMENTO; CITY OF SACRAMENTO; SACRAMENTO COUNTY SHERIFF'S DEPARTMENT; LOU BLANAS, individually and in his official capacity as SACRAMENTO COUNTY SHERIFF; SACRAMENTO POLICE DEPARTMENT; ALBERT NAJERA, individually and in his official capacity as CHIEF OF POLICE OF THE CITY OF SACRAMENTO; SACRAMENTO SHERIFF OFFICERS DOES 1-24; SACRAMENTO POLICE OFFICERS DOES 50-99; and ADDITIONAL DOES 100-150, inclusive.<br><br>Defendants. | No. 2:06-cv-01652-MCE-EFB<br><br><br><br><br><br><br><br><br><br><br><br><br>MEMORANDUM AND ORDER |

----oo0oo----

Through the present action, Plaintiffs seek redress for several federal and state law claims alleging that Defendants violated Plaintiffs' civil rights during the course of responding to a domestic disturbance call at the home of the now deceased Dwayne Zachary.  Presently before the Court is a Motion by Defendants County of Sacramento, Craig Harmon, Brent Jarvis, Brett Spaid, Rebecca Purdy, Jeremy Day, Kenneth Wight, Matthew Tallman, Andrew Croley, Kevin Jordan, Bill Myers, Donald Vagt and Lou Blanas ("Defendants") for Summary Judgment or, in the alternative, Summary Adjudication of issues, pursuant to Federal Rule of Civil Procedure 56.  For the reasons set forth below Defendants' Motion is denied in part and granted in part.[1]

**BACKGROUND**

On August 4, 2005, Officers Tallman, Spaid and Harmon responded to a domestic disturbance call at the apartment of Dwayne Zachary.  Upon arrival, Zachary opened the door naked and made offensive comments to the officers.  He was thereafter handcuffed and seated on the couch as the officers checked the apartment.  When it was determined that Zachary was unarmed and did not present a threat, the officers uncuffed Zachary and returned to their cars.

///
///

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. Local Rule 230(g).

As the officers were leaving the apartment complex, Zachary ran outside of his apartment wearing only a bathrobe. Zachary was sweating and behaving in an erratic manner. The officers ordered Zachary to stop running and to show his hands. Zachary repeatedly refused to comply with their commands. Zachary then turned and ran back to his apartment.

The officers chased after Zachary as a result of his failing to obey their commands and because they were unable to determine if he had some sort of weapon. The officers eventually caught up with Zachary in the apartment and attempted to subdue him. In attempting to subdue Zachary, Officer Tallman used his Taser. The Taser had no effect and Zachary began to run to another part of the apartment. Officer Spaid followed and used a Taser on Zachary a second time, again to no avail. Soon after, Officers Jordan, Jarvis, Croley and Day arrived at the apartment. Jordan shouted a warning to Zachary and then used a Taser on him for the third time. It also had no effect. Harmon then began to hit Zachary with his baton in an effort to subdue him. According to Plaintiffs, several officers beat and punched Zachary in his head, body, and mouth, dislodging his teeth. During the struggle, the officers double cuffed Zachary and placed him under maximum restraints. Zachary was held face down, stomach to the ground, with his ankles strapped toward his waist in a "hog-tie" manner.

///
///
///
///

3

During the altercation, Plaintiff Shamika Thomas, Zachary's adult daughter, arrived at the home and could see through the front door that there were officers inside. She alleges she could hear screaming and fighting. Shamika claims she asked deputies if she could speak to her father, but they refused.

She then states she watched the altercation from an open kitchen window on the north side of the premises where she could hear fighting and see deputies making "fighting type movements." According to Plaintiffs, Shamika heard her father cry out and call for his "baby girl" before he went silent.

After a period of time, the Officers observed that Zachary was not breathing. The officers immediately began CPR and called for an ambulance. Zachary was rushed to a nearby hospital but was pronounced dead later that evening. The Coroner's Final Report listed the cause of death as "[s]udden cardiac arrest while being restrained prone after physical altercation with police that included [the] use of [T]asers, due to excited delirium due to acute cocaine and MDMA intoxication." The present action followed.

Defendants now move for summary judgment or summary adjudication of Plaintiffs' claims. Specifically, Officer Brett Spaid and Sheriff Lou Blanas move for summary judgment on all causes of action. Defendant County of Sacramento moves for summary adjudication of Plaintiffs' First, Second, Third, Eighth, Ninth, Tenth, and Eleventh Causes of Action.

///
///
///

4

1  The remaining Defendants, Officers Harmon, Jarvis, Purdy, Day,
2  Tallman, Croley, Jordan, Wight, Vagt, and Lt. Meyers, move for
3  summary adjudication of Plaintiffs' Eighth, Ninth, and Tenth
4  Causes of Action.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party claiming relief may move...for summary judgment on all or part of the claim."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

///
///
///

5

> A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Anderson, 477 U.S. at 251 (quoting Schuylkill and Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts....Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

**A.  Section 1983 Claims (First, Second, and Third Causes of Action)**

    **1.  County of Sacramento**

Section 1983 of Title 42 of the U.S. code authorizes private parties to enforce their constitutional rights against defendants who acted under the color of state law. 42 U.S.C. § 1983. A plaintiff may hold a municipality liable under section 1983 for its official acts pursuant to policy, regulation, custom or usage.

1  Chew v. Gates, 27 F.3d 1432, 1444 (9th Cir. 1994) (citing Monell
2  v. Dept. of Soc. Serv. of City of N.Y., 436 U.S. 658, 690-91
3  (1978)).  The municipality policy need only cause the
4  constitutional violation; it need not be unconstitutional per se.
5  Jackson v. Gates, 975 F.2d 648, 654 (9th Cir. 1992).  A policy
6  "causes" an injury where it is "the moving force" behind the
7  constitutional violation.  Monell 436 U.S. at 694. Alternatively,
8  a municipality may also be liable for failing to act, thereby
9  exhibiting "deliberate indifference" to constitutional rights.
10 City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989).

11      Here, the County seeks summary adjudication of Plaintiffs'
12 claim arguing that it cannot be held liable under Section 1983
13 because it had in place an elaborate system of policies and
14 training procedures as to the proper use of force during arrest.

15      However the focus here is not on the County's stated
16 policies but on its "customs."  Plaintiffs have alleged evidence
17 of several Taser-related deaths in the Sacramento area in the
18 past five years and point out the County policy allows for the
19 use of Tasers whenever there is a "tactical advantage," thus
20 giving officers wide discretion in the use of force.  This makes
21 it disputable whether the County had a "custom", either actively
22 or by omission, of having officers employ excessive force in
23 arrests.

24      There is a triable issue of fact as to whether the County of
25 Sacramento failed to act or is liable under its customs.  Summary
26 adjudication on this issue is denied.
27 ///
28 ///

**2.    Sheriff Lou Blanas**

Plaintiffs allege that Defendant Sheriff Lou Blanas is similarly liable under Section 1983 due to his supervisory role as Sheriff of Sacramento County.  A supervisor is liable for constitutional violations by his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  There is no respondent superior liability under § 1983.  Id.

Defendants argue that Blanas was not present and therefore did not direct or set in motion any chain of events that resulted in a constitutional injury.

However Plaintiffs, although admitting that there is no direct respondent superior liability, argue that the evidence of Taser-related deaths in Sacramento alerted the Sheriff that constitutional violations were occurring, and yet he failed to change anything about the County's policies.  By signing off on the County's Taser training and customs of use, Plaintiffs assert that Blanas authorized, and therefore directed and participated in, the violation of Plaintiffs' civil rights.

A reasonable jury could find that Blanas should have taken some level of action to help prevent the further occurrence of Taser-related deaths, and that his failure to do so resulted in the constitutional violations alleged.  There is a triable issue of fact as to whether Blanas knew of the violations and failed to act to prevent them.  Summary adjudication on the matter is denied.

9

### 3. Officer Brett Spaid

As an initial matter, there is a dispute over the applicable standard of law under which to evaluate the actions of Defendant Officer Brett Spaid. Moving parties seek to apply a Fourth Amendment reasonableness standard whereas Plaintiffs call for a substantive due process analysis under the Fourteenth Amendment. Plaintiffs have alleged use of excessive force in violation of both Fourth and Fourteenth Amendment rights.

Certain substantive due process claims might be preempted if the same claims could be decided under an explicit textual source of constitutional protection rather than under the generalized notion of substantive due process. Action Apartment Association, Inc. v. Santa Monica Rent Control Board, 509 F.3d 1020, 1024-25 (9th Cir. 2007)(citing Graham v. Connor, 490 U.S. 386, 395 (1989)). In the context of excessive force claims, the Supreme Court has held that all such allegations are to be analyzed under the Fourth Amendment "reasonableness" standard, rather than a "substantive due process" approach, even in cases where plaintiff's complaint alleges violation of both the Fourth Amendment and the Due Process Clause. Graham, 490 U.S. at 394-395 (referencing its ruling in Tenessee v. Garner, 471 U.S. 1, 5 (1985)).

///
///
///
///
///

"Because the Fourth Amendment provides an explicit textual source of constitutional protection against physically intrusive governmental conduct," that Amendment "must be the guide for analyzing these claims." Graham, 490 U.S. at 395.[2]

Accordingly, the Fourth Amendment's "reasonableness" standard will apply. In so doing, a court must consider the totality of the circumstances and balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion. U.S. v. Guzman-Padilla, 573 F.3d 865, 876-77 (9th Cir. 2009) (citing Samson v. California, 547 U.S. 843, 848 (2006); and Scott v. Harris, 550 U.S. 372, 383 (2007)). The "reasonableness" inquiry in an excessive force case is an objective one; the question is whether the officers' actions are "objectively reasonable: in light of the facts and circumstances confronting them." Forrester v. City of San Diego, 25 F.3d 804, 806 (citing Graham, supra, 490 U.S. at 396-97.)

Spaid seeks summary adjudication of Plaintiffs' claim arguing that the facts on record demonstrate that he used reasonable force on Zachary.

///

---

[2] Plaintiffs' reliance on Chavez v. Martinez, 538 U.S. 760 (2003), as standing for the notion that "egregious official conduct" that "shock[s] the conscious" may violate the due process clause, is misapplied in this case. The "shocks the conscious" test used in Chavez, as well as in County of Sacramento v. Lewis, 523 U.S. 833 (1998), to which Chavez refers, was applied to circumstances in which a due process analysis was already found to be the relevant standard. Here, Plaintiffs' allegation of excessive force necessarily invokes a Fourth Amendment "reasonableness" standard, preempting the "shocks the conscious" test that would be applied to a due process claim.

11

To support his claim, Spaid points to Plaintiffs' own police practices expert, Roger Clark, as concurring that Spaid's use of a Taser and a kick in an attempt to stop Zachary was reasonable, albeit not the best tactic.  Plaintiffs, however, counter that several material issues remain in dispute including a determination of whether Spaid intended to harm Zachary, whether Spaid wrongfully ignored the alleged warnings of his partners, and whether Spaid was required, under the circumstances, to intervene when fellow officers continued to struggle with Zachary.  The "totality of the circumstances" inquiry attendant to an excessive force claim inherently calls for multitude of factual determinations.

There is a triable issue of fact as to whether Spaid's actions were "objectively reasonable" in light of the circumstances confronting him.  Summary adjudication is denied.

**4.   Section 1983 Familial Relationships**

Plaintiffs also allege a claim for loss of familial relationship as recognized under the Fourteenth Amendment.  A substantive due process claim may be asserted by the survivors of a person killed by law enforcement based on the related deprivation of their liberty interest arising out of their relationship with deceased. Moreland v. Las Vegas, 159 F.3d 365, 371 (9th Cir. 1998).

///
///
///

Both parents and children of such a deceased person have been found to have a constitutionally protected liberty interest in their familial relationship under the Fourteenth Amendment. Curnow By and Through Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991).

However, as Defendants correctly point out, siblings may not bring such a claim under Section 1983. Siblings have no cognizable liberty interest in the companionship and society of a deceased brother. See Ward v. City of San Jose, 967 F.2d 280, 283-84 (9th Cir. 1991) (citing Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir.1984)); see also Rentz v. Spokane County, 438 F. Supp. 2d 1252, 1255 (E.D. Wash. 2006). As such, Plaintiff Linda Lampkin, as the sister of Zachary, lacks standing. Summary adjudication as to her specific claim is granted.

### B. Wrongful Death and Assault and Battery (Sixth and Seventh Causes of Action)

#### 1. Sheriff Lou Blanas

Defendant Sheriff Lou Blanas seeks summary adjudication of Plaintiffs' claims of wrongful death and assault and battery. In so doing, Blanas cites California Government Code § 820.8 which states "a public employee is not liable for an injury caused by the act or omission of another person." Blanas therefore argues that he cannot be held liable for his officers' actions when he was not present at the time.

///
///

13

1    However, California Government Code § 820.8 goes on to
2 clarify that "[n]othing in this section exonerates a public
3 employee from liability for injury proximately caused by his own
4 negligent or wrongful act or omission."  In determining
5 individual liability, the Ninth Circuit has held that a
6 supervising officer can be held liable "if he knowingly refused
7 to terminate a series of acts by others, which he knew or
8 reasonably should have known would cause others to inflict a
9 constitutional injury."  Dubner v. City and County of San
10 Francisco, 266 F.3d 959, 968 (9th Cir. 2001) (citing Watkins v.
11 City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998)).
12 A supervisor may also be held liable for his "own culpable action
13 or inaction in the training, supervision, or control of his
14 subordinates, for his acquiescence in the constitutional
15 deprivations of which the complaint is made, or for conduct that
16 showed a reckless or callous indifference to the rights of
17 others."  Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir.
18 1991) (citations omitted).

19    Here, Plaintiffs assert that Blanas was on notice that there
20 had been several Taser-related deaths in Sacramento in the years
21 preceding Zachary's death, and that eight deaths in California
22 had occurred under similar circumstances.  Plaintiffs argue that
23 Blanas's failure to change his training policies or address Taser
24 use amounted to deliberate "indifference to the rights of others"
25 making him individually liable, as supervising officer, for the
26 wrongful death and assault and battery of Dwayne Zachary.
27 ///
28 ///

14

The determination of whether Blanas was placed on notice is a factual inquiry, not a legal one.  Therefore, there is a triable issue as to whether Blanas exhibited "indifference to the rights of others."  Summary adjudication is denied.

### 2. Officer Brett Spaid

In response to Plaintiffs' claim for wrongful death, Defendants argue that Officer Brett Spaid did not participate in restraining Zachary, which they claim was the act that ultimately led to Zachary's death.  Plaintiffs argue that Spaid is liable for initiating the struggle and using a Taser on Zachary multiple times.

Because a reasonable jury could find that Spaid's participation was a factor in Zachary's death, summary adjudication is denied.

Similarly, in response to Plaintiffs' claim for assault and battery, Defendants argue that Spaid's actions were "reasonable" under the circumstances.  This too requires a factual determination.  As such, it is also a question for the jury and summary adjudication is denied.

### C. False Arrest and False Imprisonment (Sixth and Seventh Causes of Action) as to All Defendants

Defendants argue that Plaintiffs cannot make a viable claim for false arrest and false imprisonment because there was probable cause to take Zachary into custody.

///

Probable cause exists when the "facts and circumstances within the officers' knowledge... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 433 U.S. 31, 37 (1979).

Resultantly, a false arrest and false imprisonment claim rests heavily on a determination of the factual circumstances present. Both parties dispute several facts surrounding Zachary's arrest as well as the credibility of the officers relaying those facts. Determinations of these facts is once again a question for the jury and not this Court. Summary adjudication is denied.

### D. Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress (Tenth and Twelfth Causes of Action)

#### 1. All Defendants

Plaintiff Shamika Thomas brings claims for both intentional infliction of emotional distress and negligent infliction of emotional distress based on being present at the apartment where her father was being beaten, and allegedly watching and listening to the altercation from a kitchen window before being instructed by officers to leave.

///
///
///
///

16

1  To state a claim for intentional infliction of emotional
2 distress, a plaintiff must allege conduct which is especially
3 calculated to cause, and does cause, mental distress of a very
4 serious kind.  <u>Ochao v. Superior Court</u>, 39 Cal. 3d 159, 165
5 (1985).  Defendants argue that because the actions were not
6 directed at Thomas, she therefore does not have a claim for
7 intentional infliction of emotional distress.
8  The Court agrees with the Defendants.  There are no facts
9 upon which to assert such an allegation that the Officers were
10 aware of Thomas's presence at the time of her father's arrest and
11 that thet were intentionally trying to cause mental distress.
12 Summary adjudication is granted.

**2.    Sheriff Lou Blanas and Officer Brett Spaid**

16  Defendants Sheriff Lou Blanas and Officer Brett Spaid
17 specifically move for summary adjudication of Thomas's claim for
18 negligent infliction of emotional distress.  They do so on the
19 basis that they were not physically involved in the altercation
20 restraining Zachary.
21  To succeed on a claim for negligent infliction of emotional
22 distress, plaintiffs must show serious emotional distress
23 actually and proximately caused by wrongful conduct by a
24 defendant who should have foreseen that the conduct would cause
25 such distress.  <u>Cole v. Fair Oaks Fire Protection Dist.</u>, 43 Cal.
26 3d 148, 155 (1987).
27 ///

17

1  Thomas alleges that Blanas is liable for negligence related to
2  his failure to take appropriate action to train deputies about
3  the dangers of using Tasers on individuals exhibiting signs of
4  excited delirium.  Thomas further alleges that Spaid, although
5  not participating in restraining Zachary, did participate in use
6  of a Taser and kicking him.
7       The liability of Blanas and Spaid rests on whether they
8  committed "wrongful conduct", whether that conduct caused Thomas
9  serious emotional distress, and whether Blanas and Spaid should
10 have foreseen that their conduct would cause such distress.
11 Summary adjudication on these issues is granted.

13      **E.   Negligent Training, Hiring, Discipline, and Retention
              (Eleventh Cause of Action)**

15      Finally, Plaintiffs allege the tort of negligent training
16 against Sheriff Lou Blanas and County of Sacramento.  Defendants
17 argue that their training and policies are a matter committed to
18 their discretion.
19      Specifically, California Government Code § 820.2 states that
20 design of a training program, hiring decisions, and disciplinary
21 decisions are the kind that require discretion at the highest
22 level.  Plaintiffs, however, argue that this broad discretion is
23 tempered by the fact that even after being made aware of recent
24 Taser-related deaths in the area Defendants failed to take
25 action.
26 ///
27 ///
28 ///

Therefore, Plaintiffs argue that the jury should be allowed to decide whether Defendants had the discretion to ignore the mounting incidents and still not change training.

There is a triable issue of fact regarding whether the reports of recent deaths placed Blanas and the County on notice such that they were required to change their policies. A reasonable jury may find that their failure to act was negligent. Summary adjudication is denied.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Docket No. 86) is GRANTED as to Plaintiff Linda Lampkin's claim for violation of Section 1983, Plaintiff Shamika Thomas claims for intentional infliction of emotional distress and negligent infliction of emotional distress and DENIED as to all other claims.

IT IS SO ORDERED.

Dated: April 2, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

19