UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ESTATE OF DWAYNE ZACHARY, et al.,

        Plaintiffs,

    v.

COUNTY OF SACRAMENTO, et al.,

        Defendants.

No. 2:06-cv-01652 MCE-PAN

<u>MEMORANDUM & ORDER</u>

----oo0oo----

The Estate of Dwayne Zachary and several of his heirs (collectively, "Plaintiffs"), seek redress from Sacramento County and several individually named members of the Sacramento County Sheriff's Department (collectively, "Defendants") from an altercation between several deputies and Mr. Zachary, which led to Mr. Zachary's in-custody death.

///
///
///

1

Following testimony at trial, both Plaintiffs and Defendants have each separately moved for a Judgment as a Matter of Law ("JMOL"), pursuant to Federal Rule of Civil Procedure 50(a).[1]  For the following reasons, both parties' motions are denied.

**BACKGROUND**

This action is brought by the heirs of Mr. Zachary, who died while being taken into custody by Sacramento County Sheriff's Deputies.  Mr. Zachary was under the influence of three (3) days worth of cocaine and ecstasy at the time of the altercation. Several deputies were originally called to Mr. Zachary's home in response to a 911 call alleging Mr. Zachary had committed domestic violence.[2]  The deputies arrived at Mr. Zachary's residence, who answered the door in what appeared to be an agitated state, and without clothing.

The officers entered Mr. Zachary's home with his permission, and proceeded to investigate the domestic disturbance call.  As part of police protocol and for officer safety, the deputies handcuffed Mr. Zachary while they investigated the call, and searched his residence.  Upon finding no evidence of a domestic violence victim, the deputies left the premises and made their way to their patrol vehicles.

///

---

[1]  Unless otherwise noted, all further references to Rule or Rules are to the Federal Rules of Civil Procedure.

[2] The deputies responded to investigate a possible violation of California Penal Code § 273.5 upon indication that someone was attempting to harm another person within a domestic relationship.

2

However, the officers were unable to leave the premises as Mr. Zachary approached them wearing only an open bathrobe (with no undergarments) and one hand behind his back saying something which the deputies did not understand.  As a result of this conduct, Mr. Zachary was directed to show his hands which he did not do, instead running back into his home and ignoring the deputies' orders to stop.  The deputies followed Mr. Zachary into his home in the course of the foot pursuit.

An extended struggle resulted in Mr. Zachary being handcuffed, restrained with maximum restraints, and subsequent death.  Plaintiffs sought monetary damages for violations of the Fourth and Fourteenth Amendments.

A jury trial commenced on November 15, 2010.  On December 13, 2010, Plaintiffs filed a written motion requesting the Court find a JMOL.  Specifically, Plaintiffs assert that uncontroverted evidence establishes that Defendants violated Mr. Zachary's Fourth Amendment rights when they entered his home without a warrant, and all subsequent use of force was unreasonable and excessive.

At the conclusion of almost eleven days of testimony and evidence, on December 14, 2010, Defendants made an oral motion before the Court for a JMOL pursuant to Rule 50.  Defendants renewed their previous oral motion for a JMOL, and presented new arguments to the Court as to why the case had no legally sufficient basis to go to the jury.

///
///
///

**STANDARD**

Under Rule 50(a), if a party has been "fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," then this Court has discretion to resolve the issue by granting "a motion for judgment as a matter of law against the party on a claim or defense that, under controlling law, can be maintained or defeated only with a favorable finding on that issue." See also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 149 (2000); Summers v. Delta Air Lines, Inc., 508 F.3d 923, 926 (9th Cir. 2007). Such a motion may be made at any time before the case is submitted to the jury, and contain (1) the judgment sought, and (2) the law and facts that entitle the movant to a judgment. Rule 50(a)(2).

In evaluating a Rule 50(a) motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Reeves, 530 U.S. at 150. Using "all of the evidence in the record," the Court may also examine a number of factors including, "the strength of the plaintiff's prima facie case," the probative value of evidence, and "any other evidence" that supports a plaintiff's case. Id. at 148-49, 150. Any evidence that the jury is not "required to believe" should be disregarded. Id. at 151.

///
///
///

**ANALYSIS**

**A.     Plaintiffs' Motion**

In their motion, Plaintiffs contend that overwhelming evidence establishes that, as a matter of law, Defendants violated Mr. Zachary's Fourth Amendment rights when they entered his home without a warrant, and the deputies' use of force was unreasonable and excessive.

**1.     Exigent Circumstances**

Federal law mandates that a warrantless search "of a dwelling must be supported by probable cause and the existence of exigent circumstances." Fisher v. City of San Jose, 558 F.3d 1069, 1075 (9th Cir. 2009) (internal citations omitted). Exigent circumstances are defined to include those that "would cause a reasonable person to believe that entry" into a dwelling was "necessary to prevent physical harm to the officers or other persons." Id. (internal citations omitted). The use of exigent circumstances as justification for a warrantless search is the exception, not the rule, and should be used only in few and "carefully delineated circumstances." U.S. v. Struckman, 603 F.3d 731, 743 (9th Cir. 2010) (internal citations omitted). Such exceptions include the need to prevent harm to the officers or others, the hot pursuit "of a fleeing suspect," or any other "consequence improperly frustrating legitimate law enforcement efforts." Id. (internal citations omitted).

///

Plaintiffs argue that the evidence overwhelmingly demonstrates that the deputies' reentry into Mr. Zachary's apartment violated his Fourth Amendment rights. Viewing the factual record and the evidence presented at trial in the light most favorable to Defendants, a reasonable jury could find that exigent circumstances merited the deputies to reenter Mr. Zachary's home to detain him.

The conflict between the officers and Mr. Zachary begins as deputies Spaid, Tallman, and Harmon begin to leave the apartment premises. After exiting Mr. Zachary's apartment, they enter their vehicles and start to drive away. The deputies notice Mr. Zachary coming towards them, wearing only an open bathrobe and exposing his genitals. He was sweating and agitated. According to the deputies, Mr. Zachary had one hand behind his back while shouting towards them. The officers testified they gave Mr. Zachary lawful commands to stop and show his hands for officer safety. They did not know what, if anything, Mr. Zachary was holding behind his back. In the face of a law enforcement's lawful commands, Mr. Zachary disobeyed, and instead retreated quickly into his home. When he ran, the deputies' believed Mr. Zachary was now resisting arrest, and they followed him in hot pursuit.

It is reasonable that the jury could infer the facts to conclude that Mr. Zachary's conduct created an exigent circumstance exception for the deputies to enter Mr. Zachary's apartment without a warrant because his conduct was threatening them and the public at large, and he failed to lawfully obey commands in resisting arrest.

6

### 2. Excessive Force

An excessive force claim merits an inquiry as to whether an "officer's actions are objectively reasonable in light of the facts and circumstances confronting them." Bryan v. MacPherson, --- F.3d ----, 2010 WL 4925422 at *3 (9th Cir. Nov. 30, 2010) (internal citations omitted). See also Graham v. Connor, 490 U.S. 386, 397 (1989). The actions must be evaluated from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. Such an inquiry requires the Court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. Id. at 396.

Once the deputies reentered Mr. Zachary's apartment, he continued to resist arrest and refused to comply with verbal commands. The house had not been cleared for weapons and presented a potentially dangerous situation for the officers and the surrounding community. At some point, one of the officers received a physical injury, which the officers interpreted as felony assault on a peace officer, an additional potential crime committed by Mr. Zachary. The deputies handcuffed Mr. Zachary, but he continued to struggle. Back-up was called. The officers used legal compliance techniques, including the use of asps, batons, tasers, and other restraints to subdue Mr. Zachary. Evidence was presented at trial that the deputies may have been attempting to restrain Mr. Zachary for as long as ten minutes.
///
///

7

At least one deputy testified that his physical struggle with Mr. Zachary made him feel as though he was "in the fight of [his] life."

Therefore, balancing Mr. Zachary's Fourth Amendment rights against the governmental interest in protecting peace officers, and the public at large, from someone who resists arrest and refuses to comply with repeated verbal commands, a reasonable juror could find that the deputies use of force was not excessive, but necessary and reasonable in light of the circumstances. Therefore, Plaintiffs' Motion for a Judgment as a Matter of Law is denied.

**B.  Defendants' Motion**

Defendants deny Plaintiffs' claims, and moved for a JMOL on the following grounds: (1) deputies Tallman, Harmon, and Spaid had objectively reasonable cause to reenter Mr. Zachary's residence; (2) deputy Spaid did not use excessive force against Mr. Zachary; (3) uncontroverted evidence demonstrates that none of the Defendants caused Mr. Zachary's death; (4) Plaintiff heirs' claims under the Fourteenth Amendment are erroneous, as the deputies' conduct in no way "shocked the conscious;" (5) any claims against the County of Sacramento fail under the terms set forth in Monell v. Dep't of Soc. Svcs., 436 U.S. 658 (1978); and (6) no evidence was presented that indicated Sheriff Lou Blanus in any way violated Mr. Zachary's or Plaintiffs' rights.
///
///

As to the first, second, and third claims, Defendants Tallman, Harmon, and Spaid argue that exigent circumstances existed to reenter Mr. Zachary's home after the first domestic disturbance investigation, and that none of the deputies, but specifically deputy Spaid[3], used excessive force in such a way that ultimately caused Mr. Zachary's death. See supra. In the alternative, deputies Tallman, Harmon, and Spaid argue that they are entitled to qualified immunity. Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. California, 555 U.S. 223, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The doctrine balances the need to hold public officials accountable when they "exercise power irresponsibly," against protecting those who reasonably perform their duties. Id. The doctrine is an immunity from suit, not a defense to liability. Id. (internal citations omitted).

Again, viewing the factual record and evidence in the light most favorable to Plaintiffs, a reasonable jury could find that the deputies' decision to reenter the home constituted a warrantless search, in direct contravention to the evidence the deputies presented at trial.

///
///

---

[3] Deputy Spaid testified that he did not participate in restraining Mr. Zachary, which, arguably, was the ultimate cause of his death.

9

1 As plausible as Defendants' assertions are, the jury could
2 rightly find that the deputies had no legally cognizable reason
3 to reenter Mr. Zachary's home, that their testimony is less
4 credible, or any other factual determination not suited for the
5 Court's adjudication.  The jury could also find that the
6 officers' subsequent conduct inside Mr. Zachary's home, including
7 the prolonged physical struggle, their use of asps, batons,
8 kicks, punches, maximum restraints, and body weight, caused or
9 contributed to Mr. Zachary's death.  At this stage of the case,
10 the conflicting factual testimony is an issue for the jury, and
11 qualified immunity is similarly inappropriate.

12   Defendants' fourth claim also fail as a matter of law.
13 Defendants argue they are entitled to a JMOL because no
14 reasonable jury could find that their conduct shocked the
15 conscious, as required by the Fourteenth Amendment.  Plaintiff
16 heirs contend they have a claim for loss of familial relationship
17 with Mr. Zachary as a result of the deputies' actions.

18   Family members have a "Fourteenth Amendment liberty
19 interest" in the companionship of loved ones, and any official
20 conduct of family members that "shocks the conscious" is
21 "cognizable as a violation of due process. Wilkinson v. Torres,
22 610 F.3d 546, 554 (9th Cir. 2010).  To determine whether
23 excessive force shocks the conscious, the trier of fact examines
24 whether the circumstances under which the officer acts lends
25 itself to "practical" deliberation. Id. (internal citations
26 omitted).  If "deliberation is practical, then an officer's
27 deliberate indifference may suffice to shock the conscious." Id.
28 ///

10

But if "a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." Id.

By definition, this constitutional inquiry is factual in nature, weighing the totality of the circumstances and the objective reasonableness of an officer in that particular setting. See id. Each side has refuted the other's factual contentions regarding the deputies' conduct in this setting. A reasonable jury could find that the deputies' use of force on Mr. Zachary constitutes conduct that shocks the conscious, or that their attempts to restrain Mr. Zachary were entirely reasonable. See supra. Therefore, the Court cannot determine the issue as a matter of law.

Defendants' fifth and sixth claims argue that no evidence at trial indicated that municipal liability should be found for the County of Sacramento or Sheriff Blanas in his official capacity. Section 1983 of Title 42 of the United States Code authorizes private parties to enforce constitutional rights against any defendant who acts "under the color" of law. 42 U.S.C. § 1983. A plaintiff may hold a municipality liable for any act committed pursuant to official policy, regulation, custom, or usage. Chew v. Gates, 27 F.3d 1432, 144 (9th Cir. 1994) (citing Monell, 436 U.S. at 690-91).

///
///
///
///

11

The municipal policy need only cause the constitutional violation; it need not be unconstitutional on its face. See Jackson v. Gates, 975 F.2d 648, 652 (9th Cir. 1992). A policy causes injury to the plaintiff when it is "the moving force" behind the constitutional violation. Monell, 436 U.S. at 694. A municipality may also be liable for failing to act, demonstrating "deliberate indifference" to a plaintiff's constitutional rights. City of Canton v. Harris, 489 U.S. 378, 389 (1989). Similarly, a supervisor is liable for any constitutional violations committed by his subordinates if the supervisor participated in or directed the violations, or knew of the actions and failed to prevent them. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Sheriff Lou Blanas was the Sacramento County Sheriff at the time of the incident. He testified at trial that during his tenure, "the buck" stopped with him, and that he was ultimately responsible for the conduct and behavior of his officers. Sheriff Blanas was also responsible for the department's policies and procedures, including supervising deputy training. Based on this testimony, a reasonable jury could absolutely find that both the County, and Sheriff Blanas as supervisor, were liable for Mr. Zachary's death as a result of faulty training, and their failure to implement policies and practices designed to prevent Mr. Zachary's in-custody death.

///
///
///
///
///

**CONCLUSION**

Since the Court has discretion to decide a Rule 50 motion, and given the conflicting evidence presented at trial, whether the deputies' conduct was reasonable during the events in question is clearly a question for the jury.  Therefore, both Plaintiffs' (ECF No. 166) and Defendants' Motions for a Judgment as a Matter of Law are DENIED.

IT IS SO ORDERED.

Dated: December 22, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE